In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00032-CR
______________________________


JAMES PAUL NOBLE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,190


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            James Paul Noble has filed a notice of appeal from his conviction for murder. A jury found
him guilty and assessed his punishment at thirty-five years' imprisonment. The court imposed
sentence April 24, 2003. No motion for new trial was filed. 
            Noble filed a notice of appeal over six months later, on January 30, 2004. Appellate
jurisdiction is invoked by giving timely and proper notice of appeal. White v. State, 61 S.W.3d 424,
428 (Tex. Crim. App. 2001). Where no motion for new trial is filed, a defendant must file his notice
of appeal within thirty days after the day sentence is imposed or suspended in open court. Tex. R.
App. P. 26.2(a). The right to appeal is conferred by the Legislature. See Rushing v. State, 85 S.W.3d
283, 286 (Tex. Crim. App. 2002). A party may appeal only that which the Legislature has
authorized. See Marin v. State, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993); Galitz v. State, 617
S.W.2d 949, 951 (Tex. Crim. App. 1981). 
            The Texas Rules of Appellate Procedure do not establish the jurisdiction of the appellate
courts, but instead set out procedures which must be followed in order to invoke that jurisdiction. 
Olivo v. State, 918 S.W.2d 519, 523 (Tex. Crim. App. 1996). Without a timely filed notice of
appeal, a court of appeals lacks jurisdiction over the appeal.  Id. at 522. If the jurisdiction of a court
of appeals is not properly invoked, the power of the court to act is as absent as if it did not exist. 
Ex parte Caldwell, 383 S.W.2d 587, 589 (Tex. Crim. App. 1964) (op. on reh'g). The notice of
appeal is untimely. 
            We dismiss the appeal for want of jurisdiction. 
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          March 2, 2004
Date Decided:             March 3, 2004

Do Not Publish



ans-serif">                                              

On Appeal from the 401st Judicial District Court
Collin County, Texas
Trial Court No. 401-80950-02


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N
          A jury convicted Adonis Renard Tarbutton, a/k/a Adonis Reynard Tarbutton, of
aggravated robbery, and the trial court assessed punishment, enhanced by prior felony
convictions, at thirty-five years' imprisonment. See Tex. Pen. Code Ann. § 12.42(d)
(Vernon Supp. 2004). Tarbutton now appeals his conviction, challenging the legal and
factual sufficiency of the evidence to sustain his conviction, and also contending he was
denied effective assistance of counsel. We affirm the judgment.
Factual and Procedural History
          On March 22, 2002, Jeanne Reyes was at work at Armstrong McCall Professional
Beauty Supply in McKinney, Texas. At approximately 10:45 a.m., she was behind the
counter and in the process of counting money for the delivery driver to carry during his
route. She testified the amount she was to include in the delivery bag was approximately
$30.00. As she was counting the money, a man hurriedly entered the store wearing a red
windbreaker, and a brown or mahogany bandanna was covering his face. The man carried
a metal pipe. She testified she could not see most of his face, but could see that his skin
was black and that his hair was short, curly, and black. The man, according to Reyes, was
of average build. 
          The man muttered something about money to Reyes. Reyes, at first, refused to
give him any money. At that point, he approached Reyes in her location behind the
counter and mumbled something else to her. As he continued to advance toward her,
Reyes threw the money she had been counting at the man. She testified that, as he got
closer to her, she became more afraid he would hit her with the metal pipe. 
          The man placed the metal pipe on the floor at this point and, as he scooped up the
money from the floor and began to shove it in his jacket, Reyes called 9-1-1. The man left
the store, and Reyes, still on the telephone with the 9-1-1 operator, followed some distance
behind him and noted the license plate number of the white Ford Ranger in which the man
fled the scene. She reported the license number as XFA33A. 
          Officer Robert Henley of the McKinney Police Department heard the broadcast
reporting the robbery over his radio and heard Reyes' description and the license plate
number of the vehicle in which the suspect fled. Several officers scoured the area
searching for a vehicle matching that description. One officer located a white Ford Ranger
with a license plate number of XSA338 in the parking lot of a nearby apartment complex. 
The officer ran the plates, and dispatch reported the vehicle belonged to James Cheek. 
Henley spoke with the apartment complex manager, who directed him to apartment
number 1012. 
          Henley approached apartment 1012 just as Mary Langford


 was leaving the
apartment. Henley asked her whether she was a resident of the apartment, and she
replied affirmatively. He then asked whether there was anyone in the apartment, and she
replied there was not. She then changed her answer, nervously stuttering she did not think
anyone was in the apartment. Finally, when Henley asked for permission to search the
apartment, Langford consented. 
          Henley discovered a man hiding in an open bedroom closet, crouching behind some
clothing. He removed the man from his hiding place, handcuffed him, frisked him for
weapons, and identified the man as Tarbutton. In Tarbutton's right front pocket, Henley
found currency in the amount of $32.00. According to Henley's testimony, although Henley
did not question Tarbutton at this time or make any promises to Tarbutton in exchange for
a confession, Tarbutton stated, "I did it," two to three times very soon after Henley
discovered him in the closet. 
          Officer Randy VanDertuin, of the Criminal Investigations Division of the McKinney
Police Department, arrived at the scene of the crime, where he took photographs and
gathered evidence, including the metal pipe the suspect had used in the robbery. 
VanDertuin identified the metal pipe as the handle to a hydraulic jack. He spoke briefly
with Reyes, whom he described as "pretty upset," and noted that her face was red and that
she appeared to have been crying. VanDertuin then returned to the police station, where
he was advised Tarbutton had confessed to the robbery. VanDertuin met with Tarbutton
in an interrogation room, where he advised him of his rights and had him initial and sign
the written warnings. VanDertuin asked Tarbutton for a written statement and described
Tarbutton as cooperative when he agreed to give one.


 
          At trial, the State introduced evidence of Tarbutton's oral statements and his written
confession. Tarbutton's trial counsel did not move to suppress either. Tarbutton presented
no evidence. 
Sufficiency of the Evidence
          When reviewing the legal sufficiency of the evidence, we must examine the
evidence in a light most favorable to the verdict to determine whether a rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex.
Crim. App. 2000). When reviewing a challenge to the factual sufficiency of the evidence
to support the conviction, we are required to determine whether, considering all the
evidence in a neutral light, the jury was rationally justified in finding guilt beyond a
reasonable doubt. Zuniga v. State, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20
(Tex. Crim. App. Apr. 21, 2004). There are two ways in which we may find the evidence
factually insufficient. First, if the evidence supporting the verdict, considered alone, is too
weak to support the jury's finding of guilt beyond a reasonable doubt, then we must find the
evidence insufficient. Id. Second, if—when we weigh the evidence supporting and
contravening the conviction—we conclude that the contrary evidence is strong enough that
the state could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and
still be factually insufficient under a beyond-a-reasonable doubt standard." Id. If the
evidence is factually insufficient, then we must reverse the judgment and remand for a new
trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
          Tarbutton was charged with aggravated robbery by intentionally and knowingly
threatening and placing Reyes in fear of imminent bodily injury and death, and by using
and exhibiting a deadly weapon. See Tex. Pen. Code Ann. § 29.03(a)(2) (Vernon 2003). 
Tarbutton challenges only the sufficiency of the evidence to prove he intentionally or
knowingly placed Reyes in fear of imminent bodily injury or death. To satisfy this element
of robbery, the defendant's actions must threaten violence, creating a fear of injury in the
victim. See Green v. State, 567 S.W.2d 211, 213 (Tex. Crim. App. [Panel Op.] 1978). 
Fear of imminent bodily injury or death can be reasonable even if an assailant does not
verbally threaten injury or display a weapon. See Welch v. State, 880 S.W.2d 225, 226–27
(Tex. App.—Austin 1994, no pet.). The fear must be such that it would coerce a
reasonable person to part with property against his or her will. See Williams v. State, 827
S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).
          Here, the evidence at trial is legally sufficient to support the jury's conclusion that
Tarbutton placed Reyes in fear of imminent bodily injury. Reyes testified she witnessed
Tarbutton rapidly enter the store wearing a bandanna and carrying a pipe. He mumbled
some words regarding money that Reyes could not understand but interpreted as a
demand for money. After Reyes initially refused to give Tarbutton money, he came around
the corner of the counter toward Reyes. Reyes testified Tarbutton came close enough to
hit her with the pipe. Reyes threw the money when Tarbutton came around the counter
and muttered something else at her. 
          Viewing the evidence before the Court in a light most favorable to the verdict, we
conclude that a rational trier of fact could have found that Tarbutton placed Reyes in fear
of imminent bodily injury or death when he hastily entered her place of business wearing
a bandanna over his face, and when he approached her carrying a pipe and demanding
money.
          Likewise, a consideration of all the evidence in a neutral light yields the conclusion
the jury was rationally justified in finding Tarbutton guilty of aggravated robbery beyond a
reasonable doubt. The evidence supporting the conclusion Tarbutton placed Reyes in fear
of imminent bodily injury or death is not too weak to support the jury's finding of guilt
beyond a reasonable doubt. Nor do we conclude, after weighing the evidence supporting
and contravening the conviction, that the contrary evidence is strong enough the State
could not have met its burden of proof.
          In support of his contention, Tarbutton asserts he never said to Reyes he was going
to hit her with the pipe. Reyes' testimony supports this specific contention. First, she
testified she could not understand Tarbutton's words, presumably due to the bandanna. 
Second, she testified Tarbutton did not verbally threaten to hit her with the pipe. Tarbutton
also points out he stayed at least three feet from her at all times. Additionally, Tarbutton
maintains, Reyes initially refused to give the robber the money and demonstrated the
capacity to call 9-1-1 and give the operator the truck's license plate number. Therefore,
according to Tarbutton's reasoning, Reyes must not have been placed in fear of imminent
bodily injury or death.
          Again, a verbal statement is not necessary to effectuate a threat when examining
a robbery conviction. See Welch, 880 S.W.2d at 226–27. Tarbutton characterizes the
distance he kept from Reyes as evidence Reyes was not placed in fear of imminent bodily
injury or death. To the contrary, the rather short distance of three feet between a woman
and a masked, pipe-wielding stranger who appears to be demanding money would
reasonably lead a jury to conclude Reyes was placed in fear of imminent bodily injury or
death. The fact Reyes initially refused to give Tarbutton money is not evidence that would
outweigh the evidence supporting the jury's determination. In fact, such behavior supports
a conclusion to the contrary. Reyes makes the distinction between how she felt when
Tarbutton was on the other side of the store and when he came around the counter and
approached her. That, at some point during Tarbutton's movements toward her, she
began to fear Tarbutton demonstrates that such fear was sufficient to coerce Reyes to part
with the money against her will, her will as expressed by her refusal moments earlier. The
evidence that Tarbutton placed Reyes in fear of imminent bodily injury or death is legally
and factually sufficient to support the jury's verdict. 
Effective Assistance of Counsel
          Both the federal and state constitutions confer a right to effective representation by
counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. Tarbutton contends his trial
counsel was ineffective because he failed to file a motion to suppress the statements
Tarbutton made to police after his arrest and his written statement. 
          We evaluate a claim that counsel rendered ineffective assistance under the two-pronged test as set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). See
Hernandez v. State, 726 S.W.2d 53, 54–55 (Tex. Crim. App. 1986). First, we must
determine whether counsel's performance fell below an objective standard of
reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687. Then,
if we determine the first issue in the affirmative, we must assess whether there is a
reasonable probability that, but for the deficient performance of trial counsel, the outcome
of the proceeding would have been different. Id. An appellant must prove both deficiency
and harm by a preponderance of the evidence. See Jackson v. State, 973 S.W.2d 954,
956 (Tex. Crim. App. 1998). We employ a strong presumption that counsel's actions fell
within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. 
The appellant must overcome the presumption that his or her attorney's actions were part
of a sound trial strategy. Id.
          Further, in order to prevail on an ineffective assistance of counsel argument, the
allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999). That another attorney might have pursued a different course
of action does not necessarily indicate ineffective assistance. Harner v. State, 997 S.W.2d
695, 704 (Tex. App.—Texarkana 1999, no pet.). "If counsel's reasons for his conduct do
not appear in the record and there is at least the possibility that the conduct could have
been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an
ineffective assistance claim on direct appeal." Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex.
Crim. App. 2002); see Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).



          In the absence of direct evidence of counsel's reasons for the challenged conduct,
an appellate court will assume a strategic or tactical reason for counsel's action or inaction
if any can be imagined.


 Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). 
Additionally, an appellant claiming ineffective assistance for counsel's failure to file a
motion to suppress is required to prove that the motion would have been granted. 
Jackson, 973 S.W.2d at 957; see also Kent v. State, 982 S.W.2d 639, 641 (Tex.
App.—Amarillo 1998, pet. ref'd, untimely filed) (counsel not ineffective for failing to take
futile actions).
          The record before us contains no evidence of counsel's rationale for making the
decision not to file such a motion. We therefore cannot determine whether counsel's
performance was deficient and, if so, whether Tarbutton was harmed by such performance. 
Given the lack of evidence in the record supporting Tarbutton's contention, and given the
strong presumption that counsel's assistance constituted reasonable professional
representation, we conclude Tarbutton cannot demonstrate that trial counsel's failure to
move to suppress Tarbutton's oral statements and written confession was a decision that
fell below an objective standard of reasonableness. Tarbutton cannot prevail on this point
of error, and we overrule his contention.
Conclusion
          We conclude that the evidence at trial was legally and factually sufficient to support
the jury's verdict convicting Tarbutton of aggravated robbery. Further, we conclude that
Tarbutton failed to demonstrate that his trial counsel's performance constituted ineffective
assistance of counsel. We overrule Tarbutton's points of error contending otherwise. 
Accordingly, we affirm the trial court's judgment. 


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      March 3, 2004
Date Decided:         May 6, 2004

Do Not Publish